**In re HOSPITALITY VENTURES/LAVISTA, a Georgia General Partnership, Debtor.**

**Hospitality Ventures/LaVista, Plaintiff,**

**v.**

**Heartwood 11, L.L.C., Vesta Holdings I, L.L.C., and Vesta Holdings, Inc., Defendants and Third–Party Plaintiffs,**

**v.**

**DeKalb County, Georgia, and Tom Scott, in his official capacity as Tax Commissioner of DeKalb County, Third–Party Defendants.**

Bankruptcy No. 01–88200.
Adversary No. 03–06596.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Jan. 4, 2007.

Joshua M. Katz, Stites & Harbison, PLLC, Louis G. McBryan, Macey, Wilensky, Kessler, Howick & Westfall, Atlanta, GA, for Hospitality Ventures/LaVista.

Robert J. Proctor, Bradley A. Hutchins, John C. Clark, Proctor & Chambers, Bruce Z. Walker, Kelly Serene Scarbrough, Mark S. Marani, Cohen, Pollock, Merlin, Axelrod & Small, Atlanta, GA, for Heartwood 11, L.L.C. and Vesta Holdings I, LLC, Vesta Holdings, Inc.

Mark A. Thompson, DeKalb County Law Dept., Decatur, GA, for Tom Scott.

## OPINION ON REMAND WITH REGARD TO JURISDICTION AND REFERRAL OF THIRD–PARTY CLAIM AGAINST DEKALB COUNTY

PAUL W. BONAPFEL, Bankruptcy Judge.

This Opinion considers whether the District Court, under principles of supplemental jurisdiction codified in 28 U.S.C. § 1367, has subject matter jurisdiction of, and if so, whether a bankruptcy judge may hear, a third-party claim for which no independent basis of jurisdiction exists under 28 U.S.C. § 1334(b).

Section 1334(b) vests original, but not exclusive, jurisdiction of "proceedings arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code]" in the district courts. Under 28 U.S.C. § 157(a), a district court may refer such proceedings to its bankruptcy judges. In this District, the District Court has referred all proceedings within its bankruptcy jurisdiction to the bankruptcy judges. LR 83.7, NDGa.

The complaint of the chapter 11 Debtor in this adversary proceeding asserts a claim against the Defendant that arises under the Bankruptcy Code. The Debtor's claim is within the District Court's jurisdiction under § 1334(b), and it was referred to the bankruptcy judges under § 157(a) and LR 83.7, NDGa. The Debtor's claim is a "core proceeding" within the meaning of § 157(b) that a bankruptcy judge may hear and determine.

In response to the complaint, the Defendant filed a third-party complaint under Fed.R.Civ.P. 14, *applicable under* Fed. R. Bankr.P. 7014. The third-party claim does not "arise under" the Bankruptcy Code, it does not "arise in" the bankruptcy case, and it is not "related to" the bankruptcy case under the usual "conceivable effect" test of *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984), adopted by the Eleventh Circuit in *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784 (11th Cir.1990), because its resolution could not conceivably have an effect on the bankruptcy estate or administration of the bankruptcy case. Thus, no independent basis of subject matter jurisdiction of the third-party claim exists under 28 U.S.C. § 1334(b).

Under traditional principles of ancillary jurisdiction that have been codified as part of the supplemental jurisdiction of the district courts in 28 U.S.C. § 1367, a district court may exercise jurisdiction of a Rule 14 third-party claim that lacks an independent basis of federal jurisdiction if the third-party claim has a "tight nexus" with a primary claim within the court's original jurisdiction. The Defendant's third-party claim has such a nexus with the Debtor's primary claim.

The first question here is whether the supplemental jurisdiction principles of § 1367 apply such that the District Court has jurisdiction of the third-party claim. If so, the second question is whether § 157(a) authorizes its referral to a bank-

ruptcy judge.[1] (Because the third-party claim is not a core proceeding, referral will permit a bankruptcy judge to hear, but not determine, the claim under § 157(c), which provides for the entry of final judgment in non-core proceedings by the District Court after de novo review of the bankruptcy judge's proposed findings of fact and conclusions of law.)

The courts generally agree that a district court has supplemental jurisdiction under § 1367 with regard to its bankruptcy jurisdiction under § 1334.[2] Courts disagree, however, over whether a bankruptcy judge may[3] or may not[4] hear a matter within a district court's supplemental bankruptcy jurisdiction under § 157(a). For reasons explained below, the better view is that the system for the allocation of bankruptcy jurisdiction between a district court and its bankruptcy unit, comprised of the bankruptcy judges, authorizes the referral to a bankruptcy judge of a third-party claim within a district court's bankruptcy jurisdiction, as supplemented by § 1367, that is asserted in response to a claim arising under the Bankruptcy Code. Thus, although the third-party claim here has no independent jurisdictional basis, the District Court has supplemental jurisdic-

---

**1.** The issues have attracted academic attention. See, e.g., Ralph Brubaker, On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory, 41 WM. & MARY L.REV. 743, 854 (2000); Susan Block-Lieb, The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis, 62 FORDHAM L.REV. 721 (1994).

**2.** E.g., Sasson v. Sokoloff (In re Sasson), 424 F.3d 864 (9th Cir.2005), cert. denied, —— U.S. ——, 126 S.Ct. 2890, 165 L.Ed.2d 917 (2006); Doddy v. Oxy USA, Inc., 101 F.3d 448, 455 n. 3 (5th Cir.1996); Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 115 (2d Cir.1992); Allen v. Kuhlman Corp., 322 B.R. 280, 283 (S.D.Miss. 2005).

**3.** E.g., Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 869 (9th Cir.2005), cert. denied, —— U.S. ——, 126 S.Ct. 2890, 165 L.Ed.2d 917 (2006) (citing and relying on Montana v. Goldin (In re Pegasus Gold Corp.), 394 F.3d 1189, 1195 (9th Cir.2005)); Klein v. Civale & Trovato, Inc. (In re The Lionel Corp.), 29 F.3d 88, 92 (2d Cir.1994); Official Committee of Unsecured Creditors v. Riviera Med. Dev. Corp. (In re South Bay Med. Assocs.), 184 B.R. 963, 970 (Bankr.C.D.Cal.1995); Official Committee of Unsecured Creditors v. Ganz (In re Summit Airlines, Inc.), 160 B.R. 911, 923–24 (Bankr. E.D.Penn.1993); Goger v. Merchants Bank of Atlanta (In re Feifer Indus.), 141 B.R. 450, 452 (Bankr.N.D.Ga.1991); Hawkins v. Eads (In re Eads), 135 B.R. 387, 393–98 (Bankr. E.D.Cal.1991) (noting that bankruptcy judge may not try non-core matter to final judgment); Jones v. Woody (In re W.J. Servs., Inc.), 139 B.R. 824, 826 (Bankr.S.D.Tex.1992).

Prior to enactment of 28 U.S.C. § 1367 in 1990, courts generally recognized that a bankruptcy judge could hear a claim for which no independent jurisdictional basis existed under § 1334 as part of a proceeding otherwise within § 1334 jurisdiction under principles of ancillary or pendent jurisdiction. See cases cited infra, note 14.

**4.** Walker v. The Cadle Co. (In re Walker), 51 F.3d 562, 570–73 (5th Cir.1995); Halvajian v. The Bank of New York, N.A. (In re Halvajian), 191 B.R. 56, 58–59 (D.N.J.1995); Enron Corp. v. Citigroup, Inc. (In re Enron Corp.), 353 B.R. 51 (Bankr.S.D.N.Y.2006); Premium of America, LLC v. Sanchez (In re Premium Escrow Services, Inc.), 342 B.R. 390, 402–06 (Bankr. D.D.C.2006); HA2003 Liquidating Trust v. Carramore Ltd. (In re Ha-Lo Industries, Inc.), 330 B.R. 663, 672–73 (Bankr.N.D.Ill.2005); Securities Investor Protection Corp. v. Murphy (In re Selheimer & Co.), 319 B.R. 384, 390 (Bankr.E.D.Penn.2005); Davis v. Victor Warren Properties, Inc. (In re Davis), 216 B.R. 898, 902 (Bankr.N.D.Ga.1997); Adams v. Prudential Securities, Inc. (In re Foundation for New Era Philanthropy), 201 B.R. 382, 397–99 (Bankr.E.D.Penn.1996); See also SouthTrust Bank of Dothan, N.A. v. Alpha Steel Co., Inc. (In re Alpha Steel Co., Inc.), 142 B.R. 465, 470–71 (M.D.Ala.1992); Romar Int'l. Georgia, Inc. v. SouthTrust Bank of Alabama, N.A. (In re Romar Int'l Georgia, Inc.), 198 B.R. 401, 406–07 (Bankr.M.D.Ga.1996).

tion of it, and it is properly referable to this bankruptcy judge under § 157(a) and LR 83.7, NDGa, to hear as a non-core matter, subject to de novo review by the District Court, under § 157(c).

## I. FACTS AND PROCEDURAL BACKGROUND

The Debtor was (and remains) the owner of a hotel in DeKalb County, Georgia. DeKalb County assessed the value of the hotel as $6,178,700 for purposes of 1998 ad valorem taxes, resulting in a tax obligation of $93,075.92. Although the County made a similar assessment for 1997, assessments for prior and later years were substantially lower, $2,135,600 for 1995 and 1996 and $1,681,030 for 1999 through 2002.

The Debtor did not timely contest the 1998 assessment or pay the tax, and the County issued a tax fi. fa. for $97,750.22. Vesta Holdings I, LLC, as nominee for Heartwood II, LLC (formerly known as Heartwood II, Inc.) ("Heartwood") purchased the tax fi. fa. on March 18, 1999, by paying the County $100,549, the amount then due thereon, pursuant to now repealed O.C.G.A. § 48–3–19.[5]

On December 3, 2001, the Debtor filed its chapter 11 petition. On November 12, 2003, the Debtor filed this adversary proceeding against Heartwood [1]. Debtor's complaint sought a reduction of the tax claim under former § 505(a) of the Bankruptcy Code, as applicable in this proceeding prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Former § 505(a) provides that a bankruptcy court "may determine the amount or legality of any tax ... whether or not previously assessed."[6] The complaint alleged that the hotel should have been assessed with a value of $1,466,897 for 1998 and the Debtor's tax liability for that year reduced accordingly.

Heartwood answered and filed the third-party complaint against DeKalb County,[7] seeking relief from the County if Heartwood suffered a loss because its claim was allowed for less than what it paid the County [6, 7]. The third-party complaint asserted alternative remedies against DeKalb County in the event that the Court reduced the tax claim. First, Heartwood claimed that, if the tax claim were reduced under § 505(a), DeKalb County would be liable to Heartwood for the difference between what Heartwood had paid DeKalb County for the claim and such reduced amount. Alternatively, Heartwood asserted that, if the claim were reduced, its purchase from DeKalb County should be rescinded, thus substituting DeKalb Coun-

---

5. Former O.C.G.A. § 48–3–19(a)(1) provided in pertinent part:

 Whenever any person other than the person against whom an execution has been issued pays an execution issued for state, county, or municipal taxes and proves compliance with subsection (b) of this Code section for individual transfers or subsection (c) of this Code section for transfers in lot blocks, the officer whose duty it is to enforce the execution, upon request of the party paying the execution, shall transfer the execution to the party so paying.

6. As amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,

section 505(a) no longer permits such challenges to ad valorem taxes. References herein are to the statute prior to its amendment.

7. The third-party complaint was filed against DeKalb County and Tom Scott, in his official capacity as Tax Commissioner of DeKalb County. The County parties identify themselves as the DeKalb County Board of Tax Assessors and the DeKalb County Tax Commissioner. The nomenclature appears to be immaterial, as none of the parties have addressed the issue, and the Court, like the parties, will refer to the third-party defendant as DeKalb County.

ty for Heartwood as the holder of the claim in the Debtor's bankruptcy case.

DeKalb County's answer [12] raised the lack of subject matter jurisdiction, but it did not move to dismiss on this ground. The Debtor, however, eventually filed a motion to dismiss the third-party complaint against DeKalb County for lack of subject matter jurisdiction [72–73]. For reasons announced on the record at a hearing held on September 20, 2005, and summarized in the Court's Order entered on October 13, 2005[105], the Court denied the Debtor's motion to dismiss and its motion for summary judgment and deferred ruling on the cross-motions for summary judgment filed by Heartwood and DeKalb County with regard to the third-party complaint, pending determination of the value of the hotel at trial.

Prior to trial, the Debtor and Heartwood agreed to a compromise [106]. Among other things, the Debtor and Heartwood stipulated that the fair market value of the hotel in 1998 for ad valorem tax purposes was $2,500,000. This valuation resulted in allowance of the tax claim for $59,853.07 less than the amount of the tax as determined by DeKalb County and that Heartwood had paid. This compromise, approved without objection from DeKalb County, resolved the issues in this proceeding as between the Debtor and Heartwood. Based on the stipulation and the record as developed in connection with Heartwood and DeKalb County's motions for summary judgment and at the trial on the issue of the value of the hotel at which DeKalb County announced that it had no evidence of value to present, the Court determined in an order entered on Janu-

ary 10, 2006[116],[8] that DeKalb County was liable to Heartwood for this difference and entered judgment [117] in Heartwood's favor.[9]

On DeKalb County's timely appeal, the District Court vacated the Court's judgment and remanded. The District Court ruled that this Court had not made a true factual finding of the hotel's value and remanded for this Court to "conduct a hearing and make a proper factual determination" regarding its value. (D.Ct. Order at 9). The District Court also questioned the existence of subject matter jurisdiction of the third-party claim and directed this Court to "re-assess whether it has subject matter jurisdiction over this dispute" before proceeding with the factual determination. (*Id.* at 9–10).

## II. DISCUSSION

The issue of subject matter jurisdiction with regard to the third-party claim requires consideration of two questions. First, does the District Court have subject matter of the third-party claim by operation of 28 U.S.C. § 1367? Second, if so, may the District Court refer it to a bankruptcy judge under 28 U.S.C. § 157(a) to hear, but not determine, as a "non-core" matter under 28 U.S.C. § 157(c)?

This Opinion's consideration of these questions begins with a review of the system for bankruptcy jurisdiction (Section A) and an explanation that the third-party claim, standing alone, is not within that jurisdiction (Section B). Next, Section C discusses the development of principles of ancillary jurisdiction and their application

---

8. At trial, DeKalb County vigorously asserted a number of procedural and substantive defenses. Because DeKalb County's arguments did not include lack of subject matter jurisdiction, the Court did not address this issue in its January 10, 2006, Order.

9. This Court erred in entering the order and judgment because Heartwood's third-party claim is a non-core proceeding. 28 U.S.C. § 157(c).

in bankruptcy litigation prior to enactment in 1990 of the supplemental jurisdiction statute, 28 U.S.C. § 1367. Under these principles, the District Court would have ancillary jurisdiction of the third-party claim based on its § 1334(b) jurisdiction of the primary claim, and a bankruptcy judge would be authorized to hear it by referral under § 157(a). Section D then examines the applicability of § 1367 and its operation in connection with the jurisdiction and referral issues, concluding that district courts have supplemental jurisdiction in bankruptcy litigation and that § 157(a) authorizes a bankruptcy judge to hear a matter within that supplemental jurisdiction. Finally, Section E explains why the exercise of supplemental jurisdiction in this proceeding is appropriate under § 1367(c), which permits a district court in specified circumstances to decline to exercise supplemental jurisdiction.

## A. BANKRUPTCY JURISDICTION GENERALLY

A bankruptcy court in a judicial district is a "unit of the district court" and consists of "the bankruptcy judges in regular active service." 28 U.S.C. § 151. In statutory terms, the bankruptcy court has no jurisdiction of its own. Rather, 28 U.S.C. § 1334 vests bankruptcy jurisdiction in the district courts. Section 157(a) of Title 28 then permits a district court to refer any or all bankruptcy cases and any or all proceedings arising under the Bankruptcy Code or arising in or related to a bankruptcy case to "the bankruptcy judges for the district." Section 151 authorizes a bankruptcy judge, "as a judicial officer of the district court," to exercise "the authority conferred under [28 U.S.C. §§ 151–58] with respect to any action, suit, or proceeding" thus referred. The District Court by local rule has referred all cases and proceedings within the scope of § 157(a) to this District's bankruptcy judges. LR 83.7, NDGa.

Comparison of the language of § 1334 that vests jurisdiction in the district courts with the language of § 157(a) that authorizes referral of bankruptcy matters to the bankruptcy judges shows that the two sections are coextensive. Indeed, except for immaterial differences in number and punctuation, the pertinent words of § 157(a) are identical to those of § 1334:

| 28 U.S.C. § 1334 | 28 U.S.C. § 157(a) |
| --- | --- |
| (a) | |
| "all cases under title 11" | "any or all cases under title 11" |
| (b) | |
| "proceedings arising under title 11, or arising in or related to cases under title 11" | "any or all proceedings arising under title 11 or arising in or related to a case under title 11" |

These two provisions, then, operate to permit the referral of all matters over which a district court has bankruptcy jurisdiction under § 1334 to the bankruptcy judges.

How a bankruptcy judge handles a referred matter is governed by subsections (b) and (c) of § 157. Section 157(b) authorizes bankruptcy judges to hear and determine "core proceedings" and enter "appropriate orders and judgments." Under § 157(c), a bankruptcy judge may hear a "non-core proceeding" that "is otherwise related to a [bankruptcy] case," but any final order or judgment must be entered by the district court after it considers the bankruptcy judge's proposed findings of fact and conclusions of law de novo. "Core proceedings" are defined in § 157(b)(2); "non-core proceedings," simply enough, are those that are not "core."

The Debtor's claim initiating this adversary proceeding is core, § 157(b)(2)(B), (K), (O), and Heartwood's Rule 14 third-party claim against DeKalb County is non-core. But characterizing the third-party claim as non-core does not help to deter-

mine whether the District Court has jurisdiction of it under § 1334 and § 1367 or whether a bankruptcy judge may hear it by referral under § 157(a).

## B. Basis of Jurisdiction of the Third-Party Claim

The relevant jurisdictional provision here is § 1334(b), which gives a district court jurisdiction of proceedings "arising under" the Bankruptcy Code, "arising in" a debtor's bankruptcy case, or "related to" the bankruptcy case. If Heartwood had brought the claims asserted in its third-party complaint in an independent proceeding, such a proceeding would not have been within this jurisdictional grant.

■ Heartwood's claims do not arise under the Bankruptcy Code and do not arise in the Debtor's bankruptcy case. Thus, jurisdiction of the third-party claim in an independent proceeding would exist only if it is "related to" the Debtor's bankruptcy case.

■ As stated in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984), the usual test of whether a proceeding is "related to" a bankruptcy case is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." The Eleventh Circuit adopted this test in *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 787–88 (11th Cir.1990).

■ In an independent proceeding, Heartwood's claims would not meet this test. The outcome of its unjust enrichment claim clearly has nothing to do with the bankruptcy case and could have no impact on it as a legal matter.[10] Heartwood's alternative rescission claim, however, arguably has an effect on the bankruptcy case because a possible outcome—reinstatement of DeKalb County as the holder of the claim—would change whom the Debtor owed. A proceeding to determine the proper creditor possibly affects the Debtor's liabilities and the handling and administration of the case such that it could be found to be "related to" the case.[11] But Heartwood eventually relied solely on unjust enrichment principles as the basis for relief,[12] indicating that the rescission claim had no legal viability. Its existence, therefore, cannot provide a sufficiently colorable basis for establishing subject matter jurisdiction.

Thus, no bankruptcy jurisdiction would exist for Heartwood's claim if it were asserted in an independent proceeding. But Heartwood did not bring the claim in an independent proceeding. Rather, it asserted the claim as a third-party claim pursuant to Rule 14 in an adversary proceeding that arose under the Bankruptcy Code. The District Court clearly had jurisdiction under § 1334(b) of the adversary proceeding as originally filed, and it was properly referable under § 157(a). Resolution of the jurisdiction and referral issues with regard to the third-party claim thus requires consideration of established principles of ancillary jurisdiction applicable to Rule 14 third-party claims in federal courts and the supplemental jurisdiction statute, 28 U.S.C. § 1367, that codified and expanded those principles.

---

**10.** It could very well have a practical impact on the Debtor and the estate. Where the target of an estate's lawsuit seeks to shift liability to a third-party, the target's ability to do so may well affect its willingness to accede to the estate's demands or to compromise. *See* Brubaker, *supra* note 1, at 935.

**11.** *See generally* Brubaker, *supra* note 1, at 896 & n. 551, and cases cited.

**12.** See Heartwood's Motion for Summary Judgment filed June 7, 2005[65].

## C. JURISDICTION AND REFERRAL UNDER PRINCIPLES OF ANCILLARY JURISDICTION

Before consideration of the applicability of the supplemental jurisdiction statute, 28 U.S.C. § 1367, to the jurisdiction and referral issues, it is necessary to discuss how established principles of ancillary jurisdiction applied prior to its enactment.

The Eleventh Circuit explained the principles of ancillary jurisdiction in a non-bankruptcy context in *Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1118–19 (11th Cir.1983) (footnotes omitted):

Ancillary jurisdiction developed as an equitable doctrine during the nineteenth century. *See Freeman v. Howe*, 65 U.S. (24 How.) 450, 16 L.Ed. 749 (1861). Under the doctrine, a federal court, otherwise a court of limited jurisdiction, is empowered to adjudicate ancillary claims involving state law without an independent basis of jurisdiction. *See generally* 13 C. Wright & A. Miller, *Federal Practice & Procedure* ¶ 3523 (1975 & Supp.1980). Implicit in the doctrine is the idea that a court "acquires jurisdiction of a case or controversy in its entirety, and, as an incident to the disposition of the matter properly before it, it may decide other matters raised by the case...." *Id.* at 56; *see also [Warren G. Kleban Engineering Corp. v.] Caldwell*, 490 F.2d 800, 802 (5th Cir. 1974).

Ancillary jurisdiction originally was applied in proceedings where non-diverse claimants sought to intervene in federal actions to protect interests in assets within the control of a federal court, or in proceedings to protect and enforce the judgments of federal courts. Modern practice has seen the expansion of its application; however, ancillary jurisdiction may only operate "when there is a tight nexus with a subject matter properly in federal court." *Caldwell,*

490 F.2d at 802; *see also Amco Construction Co. v. Mississippi State Building Commission,* 602 F.2d 730, 733 (5th Cir.1979); *Florida Medical Association v. HEW,* 601 F.2d 199, 202 (5th Cir. 1979). This nexus or logical relationship between the main federal claim and the incidental state claim arises (1) when the same aggregate of operative facts serves as the basis for both claims or (2) when the core of facts supporting the original claim activates legal rights in favor of a party defendant that would otherwise remain dormant. *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.,* 426 F.2d 709, 715 (5th Cir.1970).

In a footnote, the *Eagerton* court noted that Rule 14 impleader actions "are almost always viewed as ancillary." The court stated, 698 F.2d at 1119 n. 8:

The application of ancillary jurisdiction was significantly expanded in *Moore v. New York Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), when a federal court was allowed to adjudicate an ancillary compulsory counterclaim after the main federal antitrust claim was dismissed on the merits. The unification of law and equity which culminated with adoption of the Federal Rules of Civil Procedure also served to expand the use of incidental jurisdiction consistent with fairness to the parties. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 1137, 16 L.Ed.2d 218 (1966). As a result, Rule 13 compulsory counterclaims and cross claims as well as Rule 14 impleader actions are almost always viewed as ancillary. *See, e.g., Moore, supra* (compulsory counterclaims); *Scott v. Fancher,* 369 F.2d 842 (5th Cir.1966) (cross-claims); *Dery v. Wyer,* 265 F.2d 804 (2d Cir.1959) (interpleader action).

*Eagerton* relied in part on *Revere Copper & Brass Inc. v. Aetna Casualty &*

*Surety Co.,* 426 F.2d 709 (5th Cir.1970), which stated the following in its discussion of ancillary jurisdiction, *id.* at 712–13:

> It is a tenet of long settled antiquity that once a federal court has validly acquired jurisdiction, its jurisdiction extends to all matters "ancillary" to the main cause of action, even though the ancillary matters lack federal jurisdictional requisites [*quoting Heintz & Co. v. Provident Tradesmens Bank and Trust Co.,* 30 F.R.D. 171, 173 (E.D.Pa. 1962), which cited *Moore v. New York Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926) ].
>
> . . . .
>
> . . . In this view, the court which has jurisdiction over the aggregate of facts which constitutes the plaintiff's claim needs no additional ground of jurisdiction to determine the third-party claim which [comprises] the same core of

facts. It is, we think, in this sense that the court is said to have ancillary jurisdiction over the third-party claim.

Courts regularly applied these principles to uphold federal subject matter jurisdiction of a third-party claim without an independent jurisdictional basis asserted in a case over which the federal court had subject matter jurisdiction of the original complaint, even after settlement or dismissal of the claim that had provided the original jurisdiction.[13]

Likewise, in bankruptcy litigation, courts recognized the applicability of ancillary or pendent jurisdiction principles to permit a bankruptcy judge to hear an incidental claim otherwise outside "related to" jurisdiction under § 1334(b) if the claim was so related to the primary claim for which jurisdiction existed that it was part of the same "case or controversy."[14] Un-

---

**13.** *E.g., King Fisher Marine Service, Inc. v. 21st Phoenix Corp.,* 893 F.2d 1155 (10th Cir. 1990); *Rogers v. Aetna Casualty & Surety Co.,* 601 F.2d 840 (5th Cir.1979); *Dery v. Wyer,* 265 F.2d 804 (2d Cir.1959).

**14.** *See, e.g., National Westminster Bancorp N.J. v. ICS Cybernetics, Inc. (In re ICS Cybernetics, Inc.),* 123 B.R. 467, 472 (Bankr. N.D.N.Y.1989); *Aerni v. Columbus Fed. Savings (In re Aerni),* 86 B.R. 203, 205 (Bankr. D.Neb.1988); *Dechert Price & Rhoads v. Direct Satellite Communications, Inc. (In re Direct Satellite Communications, Inc.),* 91 B.R. 5, 6 (Bankr.E.D.Pa.1988); *Sonnyco Coal, Inc. v. Bartley (In re Sonnyco Coal, Inc.),* 89 B.R. 658, 665–68 (Bankr.S.D.Ohio 1988), *aff'd in part, rev'd in part,* 131 B.R. 799 (S.D.Ohio 1990); *Petrolia Corp. v. Elam (In re Petrolia Corp.),* 79 B.R. 686, 692–93 (Bankr.E.D.Mich. 1987); *Providers Fidelity Life Ins. Co. v. Tidewater Group, Inc. (In re Tidewater Group, Inc.),* 63 B.R. 670, 673 (Bankr.N.D.Ga.1986); *Total Petroleum, Inc. v. Coral Petroleum, Inc. (In re Coral Petroleum, Inc.),* 62 B.R. 699, 704 (Bankr.S.D.Tex.1986); *Neill v. Borreson (In re John Peterson Motors, Inc.),* 56 B.R. 588, 591–92 (Bankr.D.Minn.1986); *Cook v. United States (In re Earl Roggenbuck Farms, Inc.),* 51 B.R. 913, 925–26 (Bankr.E.D.Mich.1985); *In*

*re Wood,* 52 B.R. 513, 521–24 (Bankr.N.D.Ala. 1985); *Ram Constr. Co., Inc. v. Port Auth. of Allegheny County,* 49 B.R. 363, 365–67 (W.D.Pa.1985). *But see Official Creditors' Committee of Products Liability and Personal Injury Claimants v. International Ins. Co. (In re Pettibone Corp.),* 135 B.R. 847, 852 (Bankr. N.D.Ill.1992) ("Absent 'related' jurisdiction, it is doubtful that this Court has general ancillary jurisdiction under *United Mine Workers v. Gibbs,* [383 U.S. 715, 86 S.Ct. 1130 (1966),] and its progeny, except to enter a dollar judgment in actions to bar dischargeability.").

Without considering ancillary or pendent jurisdiction principles, or determining that they were not applicable on the facts presented, several courts dismissed third-party claims that were not "related to" the bankruptcy case. *E.g., In re Schwamb,* 169 B.R. 601 (E.D.La.1994), *aff'd,* 48 F.3d 530 (5th Cir.1995) (table); *SouthTrust Bank of Dothan, N.A. v. Alpha Steel Co., Inc. (In re Alpha Steel Co., Inc.),* 142 B.R. 465 (M.D.Ala.1992) (bankruptcy court properly refused to exercise supplemental jurisdiction; expressing doubt that bankruptcy court had supplemental jurisdiction); *Spaulding & Co. v. Buchanan (In re Spaulding & Co.),* 131 B.R. 84 (N.D.Ill.1990) (noting that bankruptcy court's discretionary

der the principles of these cases, this bankruptcy judge would have authority to hear Heartwood's third-party claim.

### D. Jurisdiction and Referral Under 28 U.S.C. § 1367

In 1990, Congress enacted the supplemental jurisdiction statute, 28 U.S.C. § 1367. Section 1367 codifies principles of ancillary and pendent jurisdiction and deals with the doctrines as "supplemental jurisdiction." By authorizing supplemental jurisdiction over claims that are so related to the primary claim within a district court's original jurisdiction that they form part of the same constitutional "case or controversy," the statute extends supplemental jurisdiction to its fullest constitutional limits. *See, e.g.*, 13 Charles Alan Wright et al., Federal Practice and Procedure § 3523 at 148, § 3523.1 at 224 (Supp. 2006); 16 Moore's Federal Practice §§ 106.02, 106–03[1], 106.20 (3d ed.2006).

#### 1. *Jurisdiction of the District Court.*

■ Examination of § 1367 shows that it applies in bankruptcy litigation. Section 1367(a) provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Subsection (b) excepts certain claims of plaintiffs from supplemental jurisdiction when original jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332, and subsection (c) permits a district court to decline to exercise supplemental jurisdiction in certain circumstances. The latter provision applies only if the district court has jurisdiction.

Subject to these exceptions, § 1367(a) applies, by its terms, unless "expressly provided otherwise by Federal statute," so long as the claims otherwise outside the court's original jurisdiction "form part of the same case or controversy" as those within its original jurisdiction. Notably, § 1367 contains no exception to a district court's supplemental jurisdiction when its bankruptcy jurisdiction under § 1334 is the source of its original jurisdiction, and § 1334 itself does not expressly exclude the exercise of supplemental jurisdiction. Thus, a district court with bankruptcy jurisdiction of claims under § 1334(b) has supplemental jurisdiction of claims otherwise outside that jurisdiction if the latter claims are part of the same "case or controversy."

Courts have generally recognized that district courts have supplemental jurisdiction in bankruptcy matters. *See, e.g., Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 455 n. 3 (5th Cir.1996); *Publicker Industries, Inc. v. United States (In re Cuyahoga Equipment Corp.)*, 980 F.2d 110, 115 (2d Cir. 1992); *Allen v. Kuhlman Corp.*, 322 B.R. 280, 283 (S.D.Miss.2005); *Liberty Mut. Ins. Co. v. Lone Star Industries, Inc.*, 313 B.R. 9, 21 (D.Conn.2004). *See generally Block–Lieb, supra* note 1, at 729 (Courts "have nearly uniformly concluded that there exists jurisdiction supplemental to bankruptcy jurisdiction.").

---

refusal to exercise pendent jurisdiction, 111 B.R. 689, 694–95 (Bankr.N.D.Ill.1990) was

not appealed); *Ziglin v. Peterson (In re Peterson)*, 104 B.R. 94 (Bankr.E.D.Wis.1989).

■ The Debtor's claim arising under the Bankruptcy Code is within the District Court's jurisdiction under § 1334(b). The same core of operative facts (primarily, the value of the hotel) serves as the basis for both the Debtor's claim against Heartwood and Heartwood's third-party claim against DeKalb County, and the core of facts supporting the Debtor's claim (alleged overvaluation of the hotel) activates legal rights in favor of Heartwood against DeKalb County that would otherwise remain dormant. As such, the third-party claim has the required jurisdictional nexus with the Debtor's claim and is part of the same "case or controversy" as the original claim under the principles explained in *Eagerton v. Valuations, Inc.*, 698 F.2d 1115 (11th Cir.1983). Consequently, the District Court has jurisdiction of Heartwood's third-party claim by operation of § 1367.

### 2. *Referral to a bankruptcy judge.*

■ Given the District Court's subject matter jurisdiction of Heartwood's third-party claim, the question is whether § 157(a) and LR 83.7, NDGa, authorize its referral to a bankruptcy judge. (If not, the third-party claim is not referred and remains pending for disposition in the District Court.)

As shown earlier in Section C, courts recognized that bankruptcy judges could hear such a claim under § 157(a) if traditional ancillary jurisdiction existed.[15] Courts have divided, however, over whether § 157(a) does[16] or does not[17] authorize a bankruptcy judge to hear such a claim when a district court's jurisdiction depends on § 1367. The Eleventh Circuit has not addressed the question.

Explanation of terms and nomenclature will facilitate discussion of this issue.

First, although the statutory language in §§ 1334 and 157 refers to a relationship between the "case" and a "proceeding," use of the word "claim" for "proceeding" better captures the meaning of the statutes. If only the "proceeding" must be related to the case, there are no jurisdictional or referral issues; jurisdiction of the "proceeding" would necessarily encompass jurisdiction of all of its parts, including a third-party claim. Although such a reading might make sense in §§ 1334(b) and 157(a), it makes no sense in §§ 157(b) and (c), which define what a bankruptcy judge may determine by reference to core and non-core "proceedings." Reading "proceeding" in the broad sense would permit a bankruptcy judge to determine a non-core matter if it were asserted in a core proceeding. Thus, the statutes actually require analysis of jurisdiction and referral issues by reference to "claims."

Second, this discussion will use "core-related supplemental claim" to refer to a claim with three attributes that characterize Heartwood's third-party claim and that are critical to the referral issue: (1) It does not meet the usual "conceivable effect" test and, therefore, lacks an independent basis for jurisdiction under § 1334(b); (2) It is asserted in a proceeding in which the primary claim arises under the Bankruptcy Code such that the original proceeding is "core"; and (3) It has a nexus with the primary claim that is sufficient to bring the claim within a district court's § 1334(b) jurisdiction as supplemented by § 1367.

Section 157(a) authorizes referral of a claim that is "related to" the bankruptcy case. Heartwood's third-party claim is not "related to" the Debtor's bankruptcy case

---

**15.** Cases cited *supra,* note 14.

**16.** Cases cited *supra,* note 3.

**17.** Cases cited *supra,* note 4.

under the usual "conceivable effect" test of *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984), adopted by the Eleventh Circuit in *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784 (11th Cir. 1990). Examination of the holdings and rationales of *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984), and of *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784 (11th Cir.1990), with proper regard for Congressional intent and in the context of the operation of supplemental jurisdiction principles, however, reveals that a core-related supplemental claim is "related to" the bankruptcy case within the meaning of these statutes. The analysis below of the language, context, and purposes of the bankruptcy and supplemental jurisdiction statutes leads to the conclusion that § 157(a) authorizes referral of a core-related supplemental claim because it is "related to" the bankruptcy case by its nexus with the Debtor's primary claim arising under the Bankruptcy Code that triggers the supplemental jurisdiction principles of § 1367 and brings it within the district court's bankruptcy jurisdiction under § 1334(b).

Like this proceeding, *Pacor* involved a third-party claim. Unlike this proceeding, however, the third-party defendant in *Pacor* was the *debtor*, and the non-debtor defendant had removed the litigation to the bankruptcy court after the debtor had filed bankruptcy. Thus, in *Pacor*, there was no bankruptcy jurisdiction over the original claim that initiated the lawsuit. The litigation in *Lemco Gypsum* involved only one claim, and it did not involve the bankruptcy estate as a party at all. It was simply a dispute between the debtor's former landlord and the purchaser at a bankruptcy sale of the debtor's assets. The situation here is different; the Debtor initiated the adversary proceeding with a claim that arises under the Bankruptcy Code.

In its jurisdictional analysis, the *Pacor* court focused on whether the *primary action* had "some nexus" with the bankruptcy case that would establish the essential ingredient for "related to" bankruptcy jurisdiction. *Pacor*, 743 F.2d at 994. What it had to determine, the court continued, was "whether the primary action ... although not one directly involving the debtor ..., is still sufficiently connected with the ... bankruptcy estate, such that jurisdiction lies under 28 U.S.C. § 1471(b) [now § 1334(b)]." *Id.* The *Lemco Gypsum* court, with only one claim to consider, likewise looked for a nexus between the claim and the bankruptcy case. *Lemco Gypsum*, 910 F.2d at 787.

The court in *Lemco Gypsum* explained the reasoning of both courts, *id.* at 787–88 (footnotes omitted); *accord Pacor*, 743 F.2d at 994:

> In exploring the bounds of this nexus we endeavor to seek a definition for "related to" that best represents Congress' intent to "reduce substantially the time-consuming and expensive litigation regarding a bankruptcy court's jurisdiction over a particular proceeding". The interpretation of § 1334(b) must also avoid the inefficiencies of piecemeal adjudication and promote judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate. This court is also concerned that an overbroad construction of § 1334(b) may bring into federal court matters that should be left for state courts to decide.

Both courts thus determined that "related to" jurisdiction depends on a nexus between the claim and the bankruptcy case. They then concluded that the "usual articulation of the test" for determining whether a claim is related to bankruptcy is whether its outcome could conceivably

have any effect on the bankruptcy estate. *Lemco Gypsum*, 910 F.2d at 788; *Pacor*, 743 F.2d at 994. The *Lemco Gypsum* court ruled that the outcome of the claim between the two non-debtor parties before it could not have an effect on the bankruptcy estate. The *Pacor* court determined that the outcome of the primary action could have no effect on the bankruptcy estate.

In *Pacor*, the fact that the third-party claim involving the debtor was related to the bankruptcy case did not relate the *primary action*, to which the court applied the "conceivable effect" test, to the bankruptcy case. In effect, the *Pacor* court refused to apply ancillary jurisdiction in reverse. Thus, the existence of bankruptcy jurisdiction with regard to the *third-party* claim involving the debtor did not justify the extension of bankruptcy jurisdiction to the *primary* claim, which did not involve the debtor, or the entire lawsuit. In colloquial terms, the *Pacor* court refused to let "the tail wag the dog."

Both *Pacor* and *Lemco Gypsum* hold that the conceivable effect test is the *usual* test of whether the required nexus for "related to" jurisdiction exists. The holdings do not make that test an exclusive one, and they do not preclude a determination that a claim is "related to" the bankruptcy case if the fundamental requirement—the existence of a nexus between the claim and the bankruptcy case—arises in a different way. Consequently, a claim may be "related to" a bankruptcy case if a sufficient nexus between them exists, even if the "conceivable effect" test is not met.

*Lemco Gypsum* requires consideration of Congressional intent in determining the bounds of the required nexus. 910 F.2d at 787. Congressional intent with regard to the relationship between § 1334 and § 157 is crystal clear—Congress intended to permit district courts to refer to bankruptcy judges any matter within the district courts' bankruptcy jurisdiction. This Congressional intent requires that, when a nexus between a core-related supplemental claim and a primary claim within a district court's original bankruptcy jurisdiction is sufficient to extend the district court's bankruptcy jurisdiction to such a supplemental claim by operation of § 1367, such nexus also provides a nexus that relates the core-related supplemental claim to the bankruptcy case within the meaning of the "related to" requirement of § 157(a).

The jurisdictional nexus that, by virtue of § 1367, brings a core-related supplemental claim within a district court's bankruptcy jurisdiction under § 1334(b) relates such a claim to the bankruptcy case in at least two ways.

The first way is based on the principle that, if the required jurisdictional nexus between the primary claim and the core-related supplemental claim exists, they form one constitutional "case or controversy." For such a nexus to exist, the primary and incidental claims must involve the same aggregate or core of facts. When the required nexus exists, the concept of supplemental jurisdiction is that a court with "jurisdiction over the aggregate of facts which constitutes the plaintiff's claim needs no additional ground of jurisdiction to determine the third-party claim which [comprises] the same core of facts." *Revere Copper & Brass Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 714 (5th Cir. 1970). The core or aggregate of facts is related to the bankruptcy case because the primary claim based on them is related to the bankruptcy case. With the jurisdictional facts thus related to the bankruptcy case, other claims based on them that are part of the same "case or controversy" are also related to the bankruptcy case.

Put another way, a primary claim and a core-related supplemental claim, by virtue

of the required jurisdictional nexus, form an integrated jurisdictional unit—one "case or controversy"—a "proceeding" in bankruptcy terminology. By operation of supplemental jurisdiction principles, the two claims together are interwoven components of a single proceeding. The relationship of the primary claim arising under the Bankruptcy Code extends to the whole proceeding and encompasses all of its component parts, including a core-related supplemental claim.

This analysis of the "related to" requirement permits a district court, with jurisdiction of a constitutional "case or controversy" consisting of the primary claim and a core-related supplemental claim, to refer the entire proceeding to a bankruptcy judge in accordance with Congressional intent to permit referral of all matters within a district court's bankruptcy jurisdiction. The nexus that establishes supplemental jurisdiction under § 1367 of the core-related supplemental claim relates such a claim to the bankruptcy case because it arises out of the jurisdictional facts that are related to the bankruptcy case and because it is an integral component of a proceeding related to the bankruptcy case. In short, the same nexus required for supplemental jurisdiction establishes a relationship to the bankruptcy case. This, of course, is nothing more than the application of ancillary jurisdiction principles, as explained in *Eagerton v. Valuations, Inc.*, 698 F.2d 1115, 1118–19 (11th Cir.1983), now codified as part of supplemental jurisdiction in § 1367, to extend the relationship between a primary claim arising under the Bankruptcy Code and the bankruptcy case to a core-related supplemental claim.

This analysis is subject to criticism that it may include claims within the "related to" jurisdiction even if they are merely "related to" a "related to" proceeding, thereby resulting in indirect and possibly endless connections that extend bankruptcy jurisdiction beyond its intended limits. A related criticism asserts that the "related to" requirement already encompasses matters within the scope of supplemental jurisdiction and that, therefore, it should not be expanded.

The first point is not applicable here. The Debtor's claim giving rise to bankruptcy jurisdiction arises under the Bankruptcy Code. Moreover, the argument overlooks the fact that, if claims with extended connections are within a district court's supplemental jurisdiction, jurisdiction of them does in fact exist. So there is no problem of extending bankruptcy jurisdiction too far. And in view of Congress' intent to authorize district courts to refer all matters within their bankruptcy jurisdiction to bankruptcy judges, the reliance on supplemental jurisdiction principles to conclude that a core-related supplemental claim is related surely does not go further than Congress intended. Nor does this view of what is "related to" a bankruptcy case extend bankruptcy jurisdiction. The analysis by definition requires a claim that is already within the district court's bankruptcy jurisdiction by operation of § 1367.

Supplemental jurisdiction principles operate to relate a core-related supplemental claim to the bankruptcy case in a second way. The nexus between a core-related supplemental claim and a primary claim arising under the Bankruptcy Code that gives rise to a district court's jurisdiction by operation of § 1367 clearly relates the supplemental claim to the core proceeding that the primary claim initiated. If the core proceeding itself is a component of the bankruptcy case, it follows that a core-related supplemental claim asserted in that proceeding is related to the bankruptcy case.

An "arising under" core proceeding is a component of the bankruptcy case with regard to which it is filed. A bankruptcy case is commenced by the filing of a voluntary or involuntary petition seeking the entry of an order for relief under the Bankruptcy Code. 11 U.S.C. § 301–03. A bankruptcy case is not, however, analogous to a "case" in ordinary civil litigation. Entry of an order for relief occurs by operation of law as a consequence of the filing of a voluntary petition (no order is actually entered) or after adjudication of an involuntary petition. But the filing of a bankruptcy case presents no issues for adjudication other than determination of a contested involuntary petition. The adjudication of any substantive rights arising under the Bankruptcy Code as a consequence of the filing of a bankruptcy petition and the entry of an order for relief requires the filing of a proceeding, either a contested matter initiated by a motion, FED. R. BANKR.P. 9014, or an adversary proceeding initiated by a complaint. FED. R. BANKR.P. 7001. A bankruptcy case, therefore, must consist of more than the petition initiating it. It must also include a proceeding filed in the case to assert a claim under the Bankruptcy Code that exists as, and only as, a consequence of the entry of an order for relief based on the filing of the petition initiating the case. For purposes of jurisdictional analysis, then, the term "case" is a "collective reference" to the proceedings filed in the case that arise under the Bankruptcy Code. *Brubaker, supra* note 1, at 867.

Thus, a proceeding filed in a bankruptcy case to assert a claim arising under the Bankruptcy Code is a component of the bankruptcy case. A third-party claim within a district court's jurisdiction by operation of § 1367 that thereby relates to such a proceeding also relates to the bankruptcy case of which it is a part.

For either of these reasons, § 157(a) authorizes referral of a core-related supplemental claim, such as the third-party claim here, even if its resolution would not have a conceivable effect on the debtor's bankruptcy estate. The jurisdictional nexus required for supplemental jurisdiction under § 1367 of a core-related supplemental claim also provides the nexus required to relate such claim to the bankruptcy case for purposes of § 157(a), either because the claim is an interwoven component of a core proceeding related to the bankruptcy case or because the claim is related to a core proceeding that is a component of the bankruptcy case.

Examination of the purposes and contexts of the bankruptcy and supplemental jurisdiction statutes confirms that Congress intended this result. As shown below, Congress intended to authorize the district courts to refer all matters within their bankruptcy jurisdiction to bankruptcy judges, a result courts reached under the doctrine of ancillary jurisdiction prior to enactment of § 1367,[18] as discussed earlier in Section C. And Congress did not intend enactment of § 1367 to change this result, which is fully consistent with the Congressional purposes that underlie the system for bankruptcy jurisdiction and those that prompted enactment of the supplemental jurisdiction statute.

In 1978, Congress enacted the Bankruptcy Reform Act of 1978 as a comprehensive revision of the bankruptcy laws. One of its primary objectives was to expand bankruptcy jurisdiction and eliminate disputes over what bankruptcy judges could hear in order to avoid costly and time-consuming arguments over jurisdiction. *E.g., Miller v. Kemira, Inc. (In re*

---

**18.** Cases cited *supra,* note 14.

*Lemco Gypsum, Inc.),* 910 F.2d 784, 786–87 (11th Cir.1990); Sen. Rep. No. 95–989 at 17–18, 153–54 (1978); H.R.Rep. No. 95–595 at 43–51 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5803–04, 5963, 6004–13. The statute vested a significant expansion of bankruptcy jurisdiction in the district courts and provided for the bankruptcy courts to exercise all of it. *E.g., Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 54–55 & n. 3, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

The revised bankruptcy jurisdiction legislation enacted in 1984 in response to constitutional deficiencies relating to the exercise of federal judicial power by non-Article III bankruptcy judges that the Supreme Court found in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.* made no changes in the breadth of bankruptcy jurisdiction and again authorized bankruptcy judges to hear all matters. *See Lemco Gypsum,* 910 F.2d at 786–87. The 1984 legislation that enacted §§ 1334 and 157 in their current form addressed the constitutional problems by dividing proceedings within a district court's bankruptcy jurisdiction under § 1334 into "core" and "non-core" proceedings under § 157 and by limiting matters that a bankruptcy judge could determine by a final order or judgment to core proceedings. § 157(b), (c). In non-core proceedings, the amendment authorized bankruptcy judges to hear, but not determine, non-core proceedings, subject to a district court's de novo review and to entry of a final judgment or order by the district court. § 157(c). Importantly, the jurisdictional provisions do not even remotely contemplate a third type of proceeding that would be within a district court's bankruptcy jurisdiction but that a bankruptcy judge could not hear, other than specific types of claims subject to mandatory withdrawal of the reference or jury trial in the district court. § 157(d), (e). The unequivocal intent of Congress in both § 1334 and § 157, therefore, is to authorize district courts to refer anything within their bankruptcy jurisdiction to the bankruptcy judges, including Rule 14 third-party claims within the district court's ancillary jurisdiction.

Nothing indicates that Congress intended the supplemental jurisdiction statute to affect the outcome under the bankruptcy jurisdiction statutes. The purposes of § 1367 were to codify long-standing doctrines of ancillary and pending jurisdiction and to expand pendent party jurisdiction, the latter in response to Supreme Court decisions, including *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), that had restricted it. In this regard, § 1367 codified various doctrines of supplemental jurisdiction, including the ancillary jurisdiction principles discussed herein, as they existed prior to *Finley. See* H.R.Rep. No. 101–734 (1990); 13 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER & RICHARD D. FREER, FEDERAL PRACTICE AND PROCEDURE § 3523.1 at 224–25 (Supp.2006); 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶¶ 106.02, 106.04 (3d ed.2006). Neither the legislative history that accompanied § 1367, nor the report of a Congressionally appointed study committee whose non-controversial recommendations the statute adopted, nor the concerns and events that prompted its enactment, mention bankruptcy jurisdiction, as the authorities just cited make clear. Given the absence of any indication that § 1367 had anything to do with bankruptcy, it would be anomalous to conclude that Congress intended the enactment of § 1367, which generally expands federal jurisdiction, to restrict either the bankruptcy jurisdiction of the district courts under § 1334(b) or the referral under § 157(a) to bankruptcy judges of matters within § 1334(b), as

supplemented by established principles of ancillary jurisdiction.

For all of the reasons set forth above, § 157(a) authorizes a district court to refer to its bankruptcy judges a claim, asserted in a core proceeding arising under the Bankruptcy Code, that does not meet the "conceivable effect" test but is within its bankruptcy jurisdiction under § 1334(b), as supplemented by § 1367. The Ninth Circuit reached this result in *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864 (9th Cir.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 2890, 165 L.Ed.2d 917 (2006). The court ruled, "[A]t present, the bankruptcy court's 'related to' jurisdiction also includes the district court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 'over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Id.* at 869 (quoting 28 U.S.C. § 1367 and citing *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1195 (9th Cir. 2005)). The Second Circuit has stated the same principle, *Klein v. Civale & Trovato, Inc. (In re The Lionel Corp.)*, 29 F.3d 88, 92 (2d Cir.1994), as have several other courts,[19] including one in this District. *Goger v. Merchants Bank of Atlanta (In re Feifer Industries)*, 141 B.R. 450, 452 (Bankr.N.D.Ga.1991) (Cotton, B.J.).

The Fifth Circuit held to the contrary in *Walker v. The Cadle Co. (In re Walker)*, 51 F.3d 562 (5th Cir.1995). Citing *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), the court stated, "[P]endent-party jurisdiction does not exist, unless Congress has expressly spoken to allow it." *Walker,* 51 F.3d at 571. Because § 1367 addresses the power of district courts, not bankruptcy courts, to

exercise supplemental jurisdiction, the court determined that there was no Congressional statute conferring the power to exercise supplemental jurisdiction on the bankruptcy courts and held that the bankruptcy court did not have the power to hear a third-party claim. *Id.* at 572. Other courts have reached the same result,[20] including one in this district. *Davis v. Victor Warren Properties, Inc. (In re Davis)*, 216 B.R. 898, 902 (Bankr.N.D.Ga. 1997) (Massey, B.J.).

The reasoning of *Walker* is unpersuasive. Its observation that § 1367 refers only to the district courts, and therefore does not confer supplemental jurisdiction on bankruptcy courts, is accurate but not dispositive of whether § 157(a) authorizes referral of a claim within a district court's bankruptcy jurisdiction as supplemented by § 1367. A fundamental principle of bankruptcy jurisdiction bears repeating. District courts, not bankruptcy courts, have bankruptcy jurisdiction. The absence of a reference to bankruptcy courts in § 1367 indicates nothing more than a recognition of this aspect of bankruptcy jurisdiction. Indeed, the conferring of supplemental jurisdiction on bankruptcy courts would have been an unprecedented departure from the bankruptcy system Congress constructed in 1978 and 1984 that vests all bankruptcy jurisdiction in the district courts. Furthermore, a bankruptcy court is a unit of the district court. 28 U.S.C. § 151. Given the statutory establishment of a bankruptcy court as a unit of the district court, the enactment of § 1367 that statutorily supplements a district court's bankruptcy jurisdiction under § 1334 concurrently enabled the bankruptcy court, as its unit, to continue to hear referred matters within that jurisdiction, a

---

**19.** Cases cited *supra,* note 3.

**20.** Cases cited *supra,* note 4.

proposition hardly novel under principles of ancillary jurisdiction existing at the time of enactment.

The *Walker* court supported its ruling with the observation that "it would be somewhat incongruous to gut this careful [bankruptcy jurisdiction] system by allowing bankruptcy courts to exercise supplemental jurisdiction to pull into bankruptcy courts matters Congress excluded in its specific jurisdictional grants." *Walker*, 51 F.3d at 573. The analysis in this Opinion, however, demonstrates that the contrary is true—permitting a district court to refer all matters within its bankruptcy jurisdiction is thoroughly consistent with, and in fact advances, the purposes of the bankruptcy jurisdiction system. Moreover, the *Walker* court's observation confuses a district court's bankruptcy jurisdiction of a matter with a district court's authority to refer it to a bankruptcy judge. The issue is not whether Congress intended to exclude matters from bankruptcy jurisdiction, but whether Congress intended to prohibit a district court from referring matters within that jurisdiction to a bankruptcy judge. What is excluded from a district court's bankruptcy jurisdiction has nothing to do with the matters within it that a district court may refer (other than the obvious fact that there is nothing to refer if a matter is not within a district court's bankruptcy jurisdiction).

In summary, Congress enacted a bankruptcy jurisdiction system that vests broad bankruptcy jurisdiction in the district courts under § 1334(b) and provides for referral of everything in it to the bankruptcy judges under § 157(a). Under traditional principles of ancillary jurisdiction, a district court's jurisdiction and authority to refer all bankruptcy matters to the bankruptcy judges extends to a claim lacking an independent jurisdictional basis but which has a nexus with a primary claim arising under the Bankruptcy Code within the district court's jurisdiction—a claim that this Opinion has referred to as a "core-related supplemental claim." The enactment of § 1367 that codifies those principles and says nothing about bankruptcy jurisdiction or its referral to bankruptcy judges does not displace those principles. Rather, § 1367 simply substitutes the statutory basis of supplemental jurisdiction for the traditional doctrine of ancillary jurisdiction, with the same result. Thus, although a core-related supplemental claim does not have a "conceivable effect" on the bankruptcy case under the usual test set forth in *Pacor* and *Lemco Gypsum*, it is nevertheless "related to" the bankruptcy case because of its nexus with a core matter within the bankruptcy jurisdiction that establishes the district court's bankruptcy jurisdiction of it under § 1334(b), as extended by § 1367. Accordingly, § 157(a) authorizes this bankruptcy judge to hear Heartwood's Rule 14 third-party claim that meets those criteria.

## E. EXERCISE OF DISCRETION

 Because the District Court has jurisdiction of Heartwood's third-party claim by operation of § 1367, it is necessary to consider whether it is appropriate to decline to exercise that jurisdiction under § 1367(c). Two of the conditions in § 1367(c) that permit a district court to decline to exercise supplemental jurisdiction arguably exist here. The third-party claim may raise a novel or complex issue of state law, § 1367(c)(1), and the original claim giving rise to bankruptcy jurisdiction has been settled. § 1367(c)(3). Even if one of these requirements is met, however, the District Court has discretion to exercise supplemental jurisdiction. *E.g., Palmer v. Hospital Auth. of Randolph County*, 22 F.3d 1559, 1569 (11th Cir.1994). The considerations articulated in *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–27, 86

S.Ct. 1130, 16 L.Ed.2d 218 (1966), including judicial economy, convenience, fairness to the parties, and whether the parties would expect all the claims to be tried together, properly guide the exercise of such discretion. *Palmer*, 22 F.3d at 1569. In instances where district courts have dismissed claims within their original jurisdiction, the Eleventh Circuit has encouraged them to decline to exercise supplemental jurisdiction over remaining state claims. *E.g., Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir.2004).

If DeKalb County had requested that supplemental jurisdiction be declined, or even brought the attention of this bankruptcy judge to the subject matter jurisdiction issue, at the beginning of this proceeding, a strong argument for declining to exercise supplemental jurisdiction might have been made. The exercise of discretion at that time would have required a balancing of the interests of Heartwood in having all of its rights heard in one proceeding and in avoiding possibly inconsistent results with the interests of the Debtor in having this bankruptcy judge concentrate on bankruptcy issues raised by its primary claim and the interests of DeKalb County in having state law issues resolved in a state court.

But DeKalb County raised the issue of subject matter jurisdiction in only one sentence of a seven page answer that included 18 affirmative defenses. Although DeKalb County, like Heartwood, filed a motion to abstain under § 505, neither motion questioned subject-matter jurisdiction or suggested that jurisdiction be declined under § 1367(c). Notably, the Court can find not a single word in DeKalb County's or Heartwood's motions for abstention or for summary judgment, their responses to motions for summary judgment, or their briefs with regard to those motions, about the District Court's lack of jurisdiction under § 1334(b) or the authority of a bankruptcy judge to hear it under § 157(a). Some 60 docket entries, 18 months, hundreds of pages, and millions of words after the filing of DeKalb County's answer, the issue was explicitly raised not by DeKalb County, but by the Debtor. By the time the Debtor asserted the jurisdictional issue, discovery was concluded. Legal issues have now been briefed and this bankruptcy judge has addressed them. Settlement of the primary claim did not occur until the trial was scheduled. Thus, substantial judicial resources have been devoted to resolving the third-party claim against DeKalb County. At this point, only one factual issue remains for determination, the value of the hotel in 1998.[21] The valuation issue is not complex or difficult to try. In these circumstances, considerations of judicial economy, convenience, and fairness to the parties do not support discretionary dismissal of the third-party claim. To the contrary, those considerations support the final resolution of the matter in this proceeding. Finally, the Court notes that the parties would ordinarily expect to try all of these issues in one proceeding, as evidenced by the fact that, after the hearing on September 20, 2005, the Debtor's complaint and Heartwood's third-party claim were set for trial at the same time. (*Order entered October 13, 2005[105] ).*[22]

---

21. Perhaps there really is no factual issue remaining. Although DeKalb County insists it is entitled to a trial on value of the hotel in 1998, it conceded at the time of trial that it had no evidence to present and recently agreed to a consent judgment reducing the value for 2003 from $5,940,800 to $1,681,030 in another proceeding. Consent Order entered Aug. 16, 2006, Adversary Proceeding No. 01–88200, Docket No. 159. The County had assessed the hotel for $1,681,030 for the years 1999 through 2002.

22. The Order did, however, defer consideration of legal issues relating to Heartwood's

It is too late to turn back now. Under the circumstances of this case, it is appropriate that supplemental jurisdiction be exercised under § 1367(c).

## III. CONCLUSION

For reasons set forth above, the District Court has subject matter jurisdiction of Heartwood's Rule 14 third-party claim under the provisions of § 1334(b), as supplemented by § 1367; section 157(a) and LR 87.3, NDGa authorize its referral to this bankruptcy judge; and it is appropriate that jurisdiction be exercised.

In accordance with the District Court's instructions in the remand order, a trial on the value of the hotel will be conducted. After conclusion of the trial, the Court will make proposed findings of fact and conclu-

sions of law that will incorporate this Opinion and will submit all proposed findings of fact and conclusions of law to the District Court for its de novo review pursuant to 28 U.S.C. § 157(c). The Court does not intend that this Opinion constitute proposed findings of fact and conclusions of law for purposes of 28 U.S.C. § 157(c) and FED. R. BANKR.P. 9033.

IT IS SO ORDERED this ___ day of January, 2007.

---

third-party claim against DeKalb County and Heartwood's defenses as set forth in their cross motions for summary judgment pending

determination of the Debtor's claims against Heartwood.