prayer for injunction is denied and the petition dismissed.

*Injunction denied.*

HAMILTON and MATTHEWS, JJ., concur.

WALTER E. HALLER & Co., APPELLANT, *v.* FOUSE ET AL., APPELLEES.

(Decided June 13, 1939.)

*Mr. Harry Nusbaum,* for appellant.

*Messrs. Amerman & Mills,* for appellee, Maryland Casualty Company.

SHERICK, P. J. The plaintiff, appellant here, by this action seeks to recover from Fouse, a notary public, and Maryland Casualty Company, his bondsman on his official bond, the sum of $2392.43 damages which it claims to have sustained because of the notary failing to faithfully discharge the duties of his office.

During the year 1936, The W. R. Stucky Finance

Company presumably acquired six chattel mortgages upon automobiles which secured six certain promissory notes. These notes and mortgages were drawn due and payable to known motor car dealers. The makers, or payers and mortgagors, were non-existent and their signatures were forgeries. The automobiles purported to be mortgaged were likewise non-existent. On the respective dates of execution of these notes and mortgages, they appear as having been assigned to the Stucky company by the payee and mortgagee of the respective instruments. These assignments were forgeries. On the same respective dates it appears on the mortgages that Fouse, as notary, acknowledged the purported signatures of the named grantees to the affidavits which recite that the mortgagors were justly indebted in the amounts appearing in the respective notes to the named mortgagees. These affidavits were acknowledged without the presence of the named affiants by the notary at the instance and request of W. R. Stucky. Plaintiff thereafter purchased the notes and mortgages of the Stucky company without any investigation. Its agent testifies that it relied upon the notary's acknowledgment and the assignments to and responsibility of the Stucky company.

At the conclusion of plaintiff's case, both defendants moved for an instructed verdict. Inasmuch as neither of them were disposed to offer any evidence in support of their respective answers which denied liability, plaintiff joined in moving for judgment and the jury was discharged. The court found in defendants' favor and the judgment was accordingly entered. It is from this finding that plaintiff appeals and now claims that the court erred in its conclusion.

In order that the subject of inquiry may be narrowed, it will be noted that it is not shown that the notary had any knowledge of the forgeries or non-existence of the chattels and makers of the instruments. This fact or rather the lack of knowledge dis-

tinguishes the case from those authorities which deal with a state of facts where a notary actively participates and actuates a fraud in the first instance by a failure to perform his official duty; as, for example, where the notary fabricates a note and mortgage, deed of trust, deed or bill of sale by non-existent parties or of non-existing lands or chattels.

The Ohio law with respect to the execution and filing of chattel mortgages works a further point of distinction, for in this state the affidavit is not a part of the chattel mortgage. As between the parties thereto it is complete without it. It is therefore clear that this case is unlike causes reported from sister states where the defect is contained within the instrument created in part by the notary's act and out of which damage results to another.

Section 8564, General Code, requires a mortgagee to state under oath the amount of the claim and that it is just and unpaid, if given to secure the payment of money only, before the instrument may be filed. Just what is the statute's purpose? It was found that dishonest debtors were turning over chattels by way of mortgage to their friends with the intent and purpose of defrauding their creditors and thereby preventing the pursuit of legal remedies against them. The mischief was cured by requiring the mortgagee to take an oath that the amount was due and owing which must be filed with the mortgage. Without this affidavit the mortgagee secured no lien or preference, and creditors might seize the chattels by legal process. It also subjected a conniving mortgagee to a charge of perjury. The affidavit assured existing and future creditors of the truth of the created lien and notified them of the danger of further contract with or credit to the mortgagor or dealing with the mortgaged chattels. It, however, was not contemplated that such an affidavit would impart to the mortgage the element of negotia-

bility as generally understood with respect to commercial paper. It was not intended as a badge of insurance of the authenticity of the instrument to one who might thereafter purchase it.

It is therefore concluded that plaintiff had no legal right to rely solely upon the affidavit. The affidavits herein appearing do not recite that the affiant is "to me personally known" as in most acknowledgments to instruments of conveyance. One administering such oaths may frequently be innocently imposed upon, for under the statutes a mortgagee's "agent or attorney" may make the affidavit.

In *New England Bond & Mortgage Co.* v. *Brock*, 270 Mass., 107, 169 N. E., 803, 68 A. L. R., 371, we find a case where one other than a mortgagee pawned himself off on a notary who acknowledged a release of a recorded mortgage. The acknowledgment was a requirement for admission of the release to record. Another relied upon the release. The notary was held not liable. During the course of the opinion it is said "the purpose of the law was not to inform the world with regard to the validity of the instrument, but to entitle it to record." The Ohio law under discussion is entitled to a like interpretation. It is further aptly stated by that court therein, that neither an acknowledgment nor record can impart validity to an otherwise spurious instrument.

There exists a further reason why the judgment must be affirmed. It is well established that in suits for damages growing out of an act done by a notary which amounts to official misconduct and which leads another to his damage, the notary and his surety are not liable upon his official bond unless the improper act was the proximate cause thereof.

Assuming for the moment that plaintiff had a right to rely upon the notarial acknowledgment, we advance the logic found in *Governor, ex rel. Mlekus,* v.

*Maryland Casualty Co.,* 192 Wis., 472, 213 N. W., 287, 51 A. L. R., 1478:

"If the property mortgaged was valueless, then the mortgage was valueless, no matter whether the certificate was true or false, and the damage sustained by one taking such mortgage could not be the proximate result of the false certificate. * * * If a true certificate would not have saved the plaintiff from her loss, how can it be argued that the false certificate was a proximate cause of her loss?"

*State, ex rel. Scruggs,* v. *Packard,* 199 Mo. App., 53, 201 S. W., 953, presents a very similar case with but two exceptions, which are that the mortgagor made the acknowledgment and the notary certified that he was known to her. However, as in the case at bar, the mortgagor and the cattle mortgaged were non-existent and the instruments were forged. The court held:

"The notary's certificate can in no wise be deemed to certify to the ownership of, or title to, the property described in the instrument acknowledged, nor can any one rely upon the certificate of acknowledgment as evidence of such title."

The second paragraph of the syllabus of the case presents our conception of what the law should be as applied to the facts of the controversy now under review. It reads:

"2. Relator lent his money on a note apparently secured by chattel mortgage on cattle, but which was worthless since there were no such cattle in existence nor did any individual of the mortgagor's name or description exist or own any such cattle. Relator took the note and chattel mortgage without investigation, relying upon the fact that similar notes had been paid. The notary negligently certified to the identity of the mortgagor, but the relator's loss arose from the fact that no cattle were in existence from which security

could have been had if the notary's certificate had been true. The act of the notary did not have the effect of substituting another in the place of the one who has obtained the former loans since the evidence shows that the same man made relator's note. Consequently, the notary's certificate did not proximately cause the loss, and, therefore, relator could not recover more than nominal damages, but, because the notary's act was a violation of official duty which relator was entitled to have performed, relator is entitled to nominal damages.''

We approve of this statement with but one reservation. We do not see the propriety of allowance of nominal damages. If the notary was negligent, as he was, so also was the plaintiff in its failure to ascertain the existence of the chattels and their ownership by purported mortgagors and the interest of the mortgagees therein. It made no investigation. It relied on the payees' negotiation of the notes to the Stucky company, which were forged, and its endorsements to the plaintiff. The contract of the Stucky endorsements did not flow to the security. This the plaintiff well knew. We know of no rule of the law which permits recovery upon the theory of negligence where the one complaining is guilty of negligence which contributes to his injury, unless it be under the doctrine of last clear chance which can have no application here.

Plaintiff argues that if the notary's act was not the direct and proximate cause of loss, it was an intervening and contributing cause sufficient to establish liability upon the bond. Considering what has hereinbefore been said with respect to plaintiff's contributing negligence, the purpose of the statute, and the effect of acknowledging and filing, we believe this claim has been fully answered.

We have examined a host of cases which support in part the plaintiff's contention but all of them have to

do with situations where the notary, either as notary or agent, had knowledge of or participated in the fraud in the first instance, which is not the fact in this action; or the notarial act was done with a purpose of further advancing the fraud; or the false certificate or acknowledgment was embodied in the instrument, of which it was an integral part, and had it been true, the instrument would otherwise have created a valid and enforceable security, upon the filing or record of which the public had a right to rely.

The judgment is affirmed.

*Judgment affirmed.*

LEMERT and MONTGOMERY, JJ., concur.