In re Mohamed KEBE, Debtor.

Susan L. Rhiel, Plaintiff,

v.

Central Mortgage Company, et al., Defendants.

Bankruptcy No. 10–52667.
Adversary No. 10–2172.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division,
at Columbus.

March 30, 2011.

Treisa L. Fox, Columbus, OH, for Plaintiff.

Maria C Mariano Guthrie, Sikora Law LLC, Joseph M. Romano, The Romano Law Firm, Columbus, OH, for Defendants.

### MEMORANDUM OPINION ON MOTION TO DISMISS THIRD–PARTY COMPLAINT

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

### I. Introduction

Pending before the Court is the motion to dismiss ("Motion") (Doc. 18) filed by third-party defendant, Pillar Title Agency, Inc. ("Pillar"). The Motion seeks dismissal of a third-party complaint ("Third–Party Complaint") (Doc. 12) filed against it by Mamadou Seye ("Seye"), one of the defendants in this adversary proceeding. In the complaint ("Complaint") (Doc. 1) commencing the adversary proceeding, plaintiff Susan L. Rhiel ("Trustee"), the trustee appointed in the Chapter 7 bankruptcy case of Mohamed Kebe ("Debtor"), seeks to avoid a mortgage that the Debtor granted on property located at 6797 Sowers Drive, Canal Winchester, OH 43110, which he owns jointly with Seye ("Property"), and to sell each of their one-half interests in the Property.

In the Third–Party Complaint, Seye alleges that Pillar—the company hired to conduct the closing—was negligent because its notary public failed to properly notarize the mortgage granted by the Debtor and Seye. According to Seye, it is Pillar's alleged negligence that permits the Trustee to avoid the mortgage. *See* Third–Party Compl. ¶¶ 9–10. Seye seeks to recover from Pillar "monetary damages in an amount to be determined at trial but no less than $25,000 along with all court costs and attorney fees." *Id.* at8. Pillar argues that the Court lacks subject-matter jurisdiction over the Third–Party Complaint because the claim for negligence "is in no way related to the bankruptcy proceeding." Motion at 5. For the reasons stated below, the Court concludes that Seye has failed to meet his burden. of establishing that the outcome of the pro-

ceeding between Pillar and Seye, which was initiated by the Third–Party Complaint, could conceivably have any effect on the Debtor's estate being administered by the Trustee. Because the Court lacks subject-matter jurisdiction over Seye's negligence claim, the Third–Party Complaint must be dismissed.

## II. Jurisdiction

The Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. The parties do not dispute that the Third–Party Complaint is a non-core proceeding under 28 U.S.C. § 157(b)(2). The Court, however, still must determine whether the litigation between Seye and Pillar commenced by way of the Third–Party Complaint is a civil proceeding related to the underlying bankruptcy case and thus within the scope of the Court's subject-matter jurisdiction conferred by 28 U.S.C. § 1334(b). *See, e.g., Chicot Cnty. Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 376–77, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *Mata v. Eclipse Aerospace, Inc. (In re AE Liquidation, Inc.),* 435 B.R. 894, 900 (Bankr.D.Del.2010) (citing Chicot for the proposition that "[t]he Court has jurisdiction to determine whether it has subject matter jurisdiction over the ... [a]dversary [p]roceeding.").

## III. Background

On March 11, 2010, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Before commencing his bankruptcy case, the Debtor and Seye granted a mortgage ("Mortgage") in favor of Washtenaw Mortgage Company ("Washtenaw") on the Property, which they jointly own. The Mortgage was assigned to Central Mortgage Company ("Central Mortgage"). The Mortgage and subsequent assignment were each recorded with the Franklin County, Ohio Recorder's Office. *See* Compl. ¶¶ 10–11. On his Schedule A—Real Property—the Debtor discloses a one-half ownership interest in the Property. And on Schedule D—Creditors Holding Secured Claims—the Debtor lists Central Mortgage as the holder of a first mortgage against the Property.

The Trustee commenced this adversary proceeding by filing the Complaint against Central Mortgage and Seye. She alleges, among other things, that the Debtor's interest in the Property is property of the bankruptcy estate. *See id.* ¶ 9. Exercising the strong-arm powers granted by § 544(a)(3) of the Bankruptcy Code,[1] she seeks to avoid the Mortgage as to the Debtor's one-half interest in the Property on the ground that the certificate of acknowledgment accompanying the Mortgage is defective because it does not certify the Debtor's signature. *See* Compl. ¶¶ 12, 18 & 20. According to the Trustee, the Mortgage was not entitled to be recorded under Ohio law and, pursuant to Ohio Revised Code § 5301.25(A), did not provide her with constructive notice as a hypothetical lien creditor under § 544(a)(3). *See id.* ¶ 19. She also seeks authority to sell Seye's one-half interest in

---

1. Section 544(a)(3) states:
   (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
   . . . .

   (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
   11 U.S.C. § 544(a)(3).

the Property pursuant to 11 U.S.C. § 363(h).[2] *See* Compl. ¶¶ 33–38.

In the Third–Party Complaint, Seye alleges, among other things, that Pillar was retained by Washtenaw to act as closing agent for the Debtor and Seye's purchase of the Property. Third–Party Compl. ¶ 7. Seye also asserts that he was an "intended third party beneficiary" of the agreement under which Pillar provided the closing services to Washtenaw and that Pillar owed to Seye a duty to perform its obligations in a manner that would not cause him harm. *See id.* ¶ 8. According to Seye, Pillar's obligations included a duty to ensure that the Mortgage was properly notarized. *See id.* ¶ 9. Through Pillar's negligence, the Mortgage was not properly notarized, Seye argues, and consequently he will suffer harm as a result of the Trustee's action to avoid the Mortgage and her attempt to sell his interest in the Property. *See id.* ¶ 10. As noted above, Seye seeks the recovery of damages in an amount not less than $25,000. *See id.* at 8.

## IV. Arguments of the Parties

Pillar seeks dismissal of the Third–Party Complaint against it for lack of subject-matter jurisdiction. The Court does not have jurisdiction to hear the Third–Party Complaint, Pillar contends, because the negligence action asserted against it by Seye "is totally and completely unrelated in any manner . . . to . . . the bankruptcy proceeding. . . ." Motion at 6. To that end, Pillar argues that any purported right of Seye to recover damages from Pillar will not have any impact on the Debtor's estate or the Trustee's ability to administer the Property for the benefit of creditors. *See id.* at 5–6.

In rebuttal, Seye argues that the Court should deny the Motion because it was not timely filed. *See* Defendant Mamadou Seye's Brief in Opposition to Pillar Title Agency, Inc.'s Motion to Dismiss ("Opp'n Br.") (Doc. 20) at 2. Alternatively, Seye contends that the Court does have jurisdiction over this matter because his "claim against Pillar has a direct effect on the bankruptcy estate." *Id.* at 3. Specifically, Seye claims that the Trustee's ability to avoid the Mortgage depends on Seye's success in proving that Pillar was negligent by improperly notarizing the Mortgage. Seye states that if he "is successful in proving that Pillar was negligent in [its] duty to properly notarize the mortgage, then the Trustee will have some interest in the [Property]. Conversely, if Pillar Title is successful in proving that it was not negligent in the notarization of the mortgage, then the Trustee's claim must also fail." *Id.*

## V. Legal Analysis

### A. Alleged Untimeliness of Jurisdictional Challenge

■ Seye urges the Court to deny the Motion on the grounds that it was untime-

---

**2.** Section 363(h) provides, in pertinent part, as follows:

[T]he trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

ly filed and that Pillar did not move for leave to file out of time. Specifically, Seye argues that Pillar filed the Motion 35 days after service of the Third–Party Summons—not within the 30–day time period prescribed by Federal Rule of Bankruptcy Procedure 7012(a).[3] *See id.* at 2. His argument is without merit. Civil Rule 12(h)(3), made applicable in this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, states that "[i]f the court *determines at any time* that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3) (emphasis added). *See also Smith v. Everson*, No. CV–06–0791, 2008 WL 818512, at *3 n. 4 (E.D.N.Y. Mar. 21, 2008) ("[S]ince lack of subject matter jurisdiction may be raised at any time, plaintiff's motion to strike defendant's motion to dismiss as untimely ... [is] denied."); *Mackenzie v. Kindred Hosps. E., L.L.C.*, 276 F.Supp.2d 1211, 1217–18 (M.D.Fla.2003) ("[T]he defendant moved to dismiss the plaintiff's lawsuit for lack of subject matter jurisdiction.... The plaintiff responded that the motion appears untimely.... The plaintiff's suggestion that the motion is untimely is meritless since a party may make a motion to dismiss for lack of subject matter jurisdiction at any time." (citations and internal quotation marks omitted)).

■ The untimeliness argument also is meritless because "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte.*" *Answers in Genesis of KY., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir.2009); *Auto–Owners Ins. v. Rossi (In re Rossi)*, 444 B.R. 170, 171 (6th Cir. BAP 2011). A court's duty to review subject-matter juris-

diction is ongoing and "applies irrespective of the parties' failure to raise a jurisdictional challenge on their own...." *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 890 (6th Cir.1998). The Court is therefore required to review its subject-matter jurisdiction regardless of whether or when a motion challenging subject-matter jurisdiction is filed.

**B. The Court Lacks Subject–Matter Jurisdiction Over the Third–Party Complaint.**

■ A defendant challenging subject-matter jurisdiction under Civil Rule 12(b)(1) may raise this defense by motion, but it does not have the burden of demonstrating a lack of jurisdiction. Instead, "the *plaintiff* has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir.1986). *See also Official Pillowtex LLC v. Hollander Home Fashions Corp.*, 479 F.Supp.2d 744, 748 (S.D.Ohio 2007) ("A Rule 12(b)(1) motion to dismiss will be granted only if, taking as true all facts alleged by the plaintiff, the court is without subject matter jurisdiction to hear the claim."). Seye, as the plaintiff in the Third–Party Complaint, has the burden of proving that the Court has subject-matter jurisdiction over the proceeding. As explained below, he fails to meet this burden.

The Third–Party Complaint here involves non-debtors and thus the Court's jurisdiction must "be determined solely by 28 U.S.C. § 1334(b)." *Michigan Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1140 (6th Cir.1991). Section 1334(b) of title 28 states that "the district courts shall have original but not exclusive jurisdiction

---

**3.** *See* Rule 14(a)(2)(A) of the Federal Rules of Civil Procedure ("Civil Rule(s)"), made applicable in this adversary proceeding by Rule

7014 of the Federal Rules of Bankruptcy Procedure.

of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Under § 157(a) of title 28, "[e]ach district court may provide that any and all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a).[4] "[F]or purposes of determining section 1334(b) jurisdiction, it is necessary to determine whether a matter is at least 'related to' the bankruptcy." *Wolverine Radio,* 930 F.2d at 1141. Section 157(b)(3) of title 28 confers upon bankruptcy judges the ability to determine whether a proceeding is "otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3).

The Court of Appeals for the Sixth Circuit follows the test for determining "related to" jurisdiction that was enunciated in *Pacor, Inc. v. Higgins (In re Pacor),* 743 F.2d 984 (3d Cir.1984):

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Wolverine Radio,* 930 F.2d at 1142 (quoting *Pacor,* 743 F.2d at 994). The Sixth Circuit, however, applies *Pacor's* conceivable-effect test with some caution and states that even an "extremely tenuous connection" to the debtor's estate may not satisfy

the related-to jurisdictional requirement. *See id. See also Merigian v. Heller Fin., Inc. (In re Sanders Confectionery Prods., Inc.),* 973 F.2d 474, 482 (6th Cir.1992) (citing *Wolverine Radio,* 930 F.2d at 1142). And even though common issues of fact exist between a civil proceeding and a controversy involving a bankruptcy estate, a proceeding does not necessarily fall within the scope of a court's section 1334(b) jurisdiction. "Judicial economy itself does not justify federal jurisdiction." *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 789 (11th Cir.1990) (citing *Pacor,* 743 F.2d at 994).

Under the strong-arm powers conferred by § 544(a)(3), the Trustee seeks to avoid the Mortgage because it contains a defective certificate of acknowledgment, is not eligible to be recorded and thus does not bind a bona fide purchaser. The law in Ohio is well settled in defective-notary-acknowledgment cases. Avoiding a mortgage under § 544(a)(3) because of a defect in the certificate of acknowledgment requires the trustee to prove that the mortgage does not comply with Ohio Revised Code § 5301.01(A). *See Terlecky v. Chase Home Fin., LLC (In re Sauer),* 417 B.R. 523, 531 (Bankr.S.D.Ohio 2009). In order to comply with this section, a mortgage must be signed by the mortgagor, the signing of the mortgage must be acknowledged by the mortgagor and in front of a notary public, the notary public must certify the acknowledgment and the notary public must "subscribe his name to the certificate of acknowledgment." *See id.* at 531 (internal quotation marks omitted). Only a mortgage that is properly executed will take priority over a bona fide purchaser—such as a trustee having the rights and powers conferred by § 544(a)(3). *See id.* (citing *Kovacs v. First Union Home*

---

**4.** As noted above, a general order of reference    has been entered in this district.

*Equity Bank (In re Huffman),* 408 F.3d 290, 293 (6th Cir.2005)). If a trustee successfully avoids a mortgage under § 544(a)(3), then the trustee may preserve the mortgage for the benefit of the estate. *See* 11 U.S.C. § 551. In this case, if the Mortgage is avoided the Trustee will seek to sell the estate's one-half interest in the Property as well as Seye's one-half interest pursuant to § 363(h).

■ Seye contends that his claim against Pillar has a direct effect on the Debtor's bankruptcy estate. He argues that there is a connection between Pillar's alleged negligence and the Trustee's ability to successfully avoid the Mortgage. *See* Opp'n Br. at 3. But, "[w]hether a certificate of acknowledgment complies with Ohio Revised Code § 5301.01 is a question of law[,]" *see Sauer,* 417 B.R. at 529–30 (citing *Drown v. GreenPoint Mortg. Funding, Inc. (In re Leahy),* 376 B.R. 826, 828 (Bankr.S.D.Ohio 2007)), and the Trustee need only establish that the certificate of acknowledgment accompanying the Mortgage does not comply with Ohio Revised Code § 5301.01. The statute does not require a showing of negligence by the notary public and, thus, the Trustee need not establish negligence on Pillar's part in order to obtain a judgment avoiding the Mortgage.

Here, the Trustee alleges that the Mortgage fails to comply with the statutory requirements in two ways—the certificate of acknowledgment fails to identify the person whose signature is being identified and the notary public fails to certify the acknowledgment. To establish statutory noncompliance, the Trustee need not "show that Pillar Title did not properly perform its job as the closing agent[,]" as argued by Seye. Opp'n Br. at 3. The Trustee's ability to avoid the Mortgage thus is in no way dependent on, or inter-

twined with, Seye's negligence claim against Pillar.

Although not cited by the parties and not factually on all fours with the present case, *Silagy v. Thomas (In re Thomas),* Case No. 05–64078, 2007 WL 1594319 (Bankr.N.D.Ohio June 1,2007) informs the Court's jurisdictional analysis in this adversary proceeding. In *Silagy,* the third-party plaintiff conceded that it had no interest in the property at issue—unlike Seye who claims an interest in the Property and opposes the § 363(h) sale of his interest. After the trustee in *Thomas* succeeded in avoiding the bank's mortgage, the bank filed a third-party complaint against, among other parties, the title insurance company that wrote the policy on the property. It alleged that the title company was liable for damages because it breached its duties in writing the title policy. The bank maintained that the third-party complaint was a non-core proceeding, but was otherwise related to the bankruptcy case. The title company moved to dismiss the third-party complaint under Bankruptcy Rule 7012(b)(1), arguing that the court lacked jurisdiction. *See Thomas,* 2007 WL 1594319, at *1–2.

The factors considered by the *Thomas* court in determining whether the bank's third-party complaint fell within the ambit of the court's related-to jurisdiction are instructive here. In considering whether the third-party complaint asserted a claim that was related to the bankruptcy case, the *Thomas* court—under the related-to test set forth in *Wolverine*—looked at, among other things, whether the potential outcome of the litigation initiated by third-party complaint would expand or limit the trustee's or the estate's rights and whether there was any liability against or benefit to the trustee or the estate arising from the third-party claim. Applying these factors,

the court was unable to find related-to jurisdiction:

> Although both the original complaint and the third party complaint are based upon the same transactions, overlapping facts are not sufficient to confer jurisdiction, even when judicial economy is promoted....
>
> The claims of the third party complaint seek to determine whether the title insurer and agency ... are responsible for the [error that led to the avoidance of the mortgage]. If [the bank] succeeds in proving this, it will be entitled to damages from third party defendants. However, it will not have recourse against the trustee, debtor or the bankruptcy estate. [The bank] agreed that it did not have an interest in the ... property and the third party complaint will not alter that fact. Thus, the outcome of the third party complaint will not impact the administration of the bankruptcy estate, making the third party complaint an unrelated, non-core proceeding, over which the court has no jurisdiction.

*Id.* at *3 (citations omitted).

■ Application of the same decisional factors employed by the *Thomas* court leads to the inescapable conclusion that Seye has not met his burden of proving that the Court has subject-matter jurisdiction over the claim asserted in the Third–Party Complaint. Although Seye, unlike the bank in *Thomas,* does have an interest in the Property, he does not assert that the disposition of the negligence action would have any effect on the Trustee's right to sell the Property. Nor does he demonstrate how a resolution of the Third–Party Complaint would "conceivably have any effect" on the Trustee's administration of the bankruptcy estate. *See Wolverine Radio,* 930 F.2d at 1142 (finding related-to jurisdiction if *"the out-*

*come of [a] proceeding could conceivably have any effect on the estate being administered in bankruptcy");* Henderson v. Auto Barn Atlanta, Inc.(In re Henderson), No. 09–5114, 2011 WL 482827, at *7 (Bankr.E.D.Ky. Feb.7, 2011) ("[T]he Court may not exercise 'related to' jurisdiction ... because the outcome of AutoBarn's third-party action against Imperial [for indemnification, breach of fiduciary duty and slander] has no conceivable affect on the administration of the bankruptcy estate...."); *Thomas,* 2007 WL 1594319, at *3 (finding no related-to jurisdiction where the "Trustee's rights, and the rights of the estate, are not subject to expansion or limitation by the outcome of the third-party complaint"). The claim set forth in the Third–Party Complaint does not seek recovery from the Trustee or the estate and "neither the [T]rustee or estate stand to benefit from litigation of the third party complaint, nor will either be subject to liability." *Thomas,* 2007 WL 1594319, at *3. Seye accordingly fails to meet his burden of establishing related-to jurisdiction. Thus, the Court concludes that the Third–Party Complaint is an unrelated proceeding over which it has no subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(b).

## C. The Court Will Not Exercise Supplemental Jurisdiction Over the Third-party Complaint.

In support of his contention that the Court has the authority to hear the Third–Party Complaint, Seye relies solely on the Court's related-to jurisdiction under 28 U.S.C. § 1334(b). There exists, however, at least potentially, another ground for the Court's jurisdiction—supplemental jurisdiction pursuant to 28 U.S.C. § 1367. As part of its independent duty to examine its own jurisdiction, therefore, the Court also will consider supplemental jurisdiction as a

potential basis for hearing the Third–Party Complaint.

The supplemental jurisdiction statute provides in pertinent part as follows:

(a) Except as provided in subsections (b)[ [5] ] and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

. . . .

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(a) & (c) (West 2011).

It appears to be well-established that district courts have supplemental jurisdiction over all claims that are so related to claims asserted in a bankruptcy case or adversary proceeding that they form part of the same case or controversy. *See, e.g., Edge Petroleum Operating Co. v. GPR*

*Holdings, L.L.C. (In re TXNB Internal Case),* 483 F.3d 292, 300 (5th Cir.2007) ("Section 1367(a) provides for supplemental jurisdiction (subject to irrelevant exceptions) over claims forming part of the same case or controversy with 'any civil action over which the district courts have original jurisdiction.' This includes bankruptcy jurisdiction. It follows that district courts have supplemental jurisdiction over claims that form part of the same case or controversy with bankruptcy claims." (footnote omitted)); *Hospitality Ventures/LaVista v. Heartwood 11, L.L.C. (In re Hospitality Ventures/LaVista),* 358 B.R. 462, 473 (Bankr.N.D.Ga.2007) ("Courts have generally recognized that district courts have supplemental jurisdiction in bankruptcy matters."); Susan Block–Lieb, *The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis,* 62 Fordham L.Rev. 721, 729 (1994) (making an argument against the supplemental jurisdiction of district courts (and bankruptcy courts) in bankruptcy cases, but acknowledging that courts "have nearly uniformly concluded that there exists [district court] jurisdiction supplemental to bankruptcy jurisdiction" (footnote omitted)). *See also Melamed v. Lake Cnty. Nat'l Bank,* 727 F.2d 1399, 1403 (6th Cir.1984) (holding that the district court had pendent jurisdiction over a state law claim that was based on facts that were essentially the same as the facts bearing on a cause of action brought pursuant to a provision of the Bankruptcy Act).

There is, however, a split of authority on the issue of whether bankruptcy courts may properly exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). *See generally* Eric C. Surette, *Exercise of*

---

**5.** Subsection (b), which governs the supplemental jurisdiction of district courts when those courts have original jurisdiction based solely on the diversity-of-citizenship jurisdictional provision of 28 U.S.C. § 1332, is inapplicable here.

*Supplemental Jurisdiction by Bankruptcy Courts Pursuant to 28 U.S.C.A. § 1367*, 52 A.L.R. Fed.2d 243 (2011). The United States Court of Appeals for the Fifth Circuit and many other courts have held that bankruptcy courts are not authorized to exercise supplemental jurisdiction. *See, e.g., Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 572–73 (5th Cir.1995); *Halvajian v. Bank of New York, N.A.*, 191 B.R. 56, 59 (D.N.J.1995); *Samson Res. Co. v. J. Aron & Co. (In re Semcrude, L.P.)*, No. 09–51520, 2010 WL 5140487, at *18 (Bankr. D.Del. Dec.13, 2010); *Scully v. Danzig (In re Valley Food Servs., LLC)*, 400 B.R. 724, 728–30 (Bankr.W.D.Mo.2008); *Enron Corp. v. Citigroup, Inc. (In re Enron Corp.)*, 353 B.R. 51, 59–63 (Bankr.S.D.N.Y. 2006); *Dawson v. J & B Detail, L.L.C (In re Dawson)*, No. 05–1463, 2006 WL 2372821, at *6 n. 2 (Bankr.N.D.Ohio Aug.15, 2006), *aff'd*, No. 106CV1949, 2006 WL 3827459 (N.D.Ohio Dec.27, 2006); *Wilcox v. Houghton (In re Houghton)*, 164 B.R. 146, 148 (Bankr.W.D.Wash.1994). *See also* Patrick M. Birney & Michael R. Enright, *May a Bankruptcy Court Exercise Supplemental Jurisdiction Predicated on its Referred "Related to" Jurisdiction?*, 19 J. Bankr.L. & Prac. 1 Art. 1 (Jan. 2010) (taking the position that bankruptcy courts may not exercise supplemental jurisdiction under 28 U.S.C. 1367 and describing this as the majority view). According to the courts following the majority view, the exercise of supplemental jurisdiction would enable bankruptcy courts to adjudicate disputes that fall outside of their related-to jurisdiction, and "[i]t seems unlikely that Congress would have intended such a result, especially after carefully delimiting bankruptcy jurisdiction in [28 U.S.C.] § 157." *Walker*, 51 F.3d at 573. *See also Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 81 (7th Cir.1995) ("[T]here is a serious question whether 28 U.S.C. § 1367 is applicable to bankruptcy cases. Indeed, we

may assume it is not. But if it is not, this is mainly because it would step on the toes of the bankruptcy statute conferring 'related to' jurisdiction." (citations omitted)).

By contrast, the United States Court of Appeals for the Ninth Circuit and a number of other courts have held that bankruptcy courts may properly exercise supplemental jurisdiction. *See, e.g., Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1195 (9th Cir.2005); *Century 21 Real Estate, LLC v. Prestige Realty Grp. of Ohio & Florida, LLC (In re Prestige Realty Grp. of Ohio & Florida, LLC)*, 420 B.R. 894, 898–99 (Bankr.S.D.Fla.2009); *Hospitality Ventures*, 358 B.R. at 473–81; *Pierce v. Conseco Fin. Servicing Corp. (In re Lockridge)*, 303 B.R. 449, 455 (Bankr. D.Ariz.2003). According to courts following the minority view, district courts may rightfully refer to bankruptcy courts matters over which they have supplemental jurisdiction as readily as they may refer any other matters to bankruptcy courts. *See Hospitality Ventures*, 358 B.R. at 474. And, according to the court in *Hospitality Ventures*, such referred matters—although not "related to" claims within the meaning of *Pacor's* conceivable-effect test—are " 'related to' the bankruptcy case by its nexus with the Debtor's primary claim arising under the Bankruptcy Code that triggers the supplemental jurisdiction principles of § 1367 and brings it within the district court's bankruptcy jurisdiction under § 1334(b)." *Id.* at 475.

The Sixth Circuit Court of Appeals has not yet addressed the issue of whether bankruptcy courts have the authority to exercise supplemental jurisdiction. And the Court need not decide the issue here. Assuming for the sake of this opinion only that it has the authority to exercise supplemental jurisdiction, the Court concludes that it is appropriate to decline to exercise such jurisdiction over the Third–Party

Complaint. As previously set forth, pursuant to 28 U.S.C. § 1367(c), a court with supplemental jurisdiction over a claim may decline to exercise such jurisdiction if, among other things, "the claim raises a novel or complex issue of State law[.]" 28 U.S.C.A. § 1367(c). In addition to determining whether one of the predicates set forth in § 1367(c) exists, courts deciding whether to exercise supplemental jurisdiction also "should consider and weigh several factors, including the values of judicial economy, convenience, fairness, and comity [as well as] the avoidance of multiplicity of litigation, and ... should ... balance those interests against needlessly deciding state law issues[.]" *Gamel v. City of Cincinnati,* 625 F.3d 949, 951–52 (6th Cir.2010) (citations and internal quotation marks omitted).

Considering the factors set forth above as well as § 1367(c)'s provision that a court may decline to exercise supplemental jurisdiction over a claim that raises a novel issue of state law, the Court concludes that it is appropriate to decline to exercise supplemental jurisdiction over the Third–Party Complaint.

First, the Third–Party Complaint appears to raise a novel issue of state law. As explained above, Seye asserts that he was an intended third-party beneficiary of a contract between a closing agent, Pillar, and a lender and that Pillar therefore owed a duty of care to him. He seeks to hold Pillar liable for a breach of this purported duty in connection with the closing of a mortgage on which he is one of the mortgagors, but which the Trustee is now seeking to avoid only to the extent of the Debtor's interest in the property and based solely on the purported defective acknowledgment of the Debtor's signature, not Seye's. In Ohio, a notary public may, under certain circumstances, be held liable for damages incurred in connection with the certification of an acknowledgment. *Compare Keck v. Keck,* 54 Ohio App.2d 128, 375 N.E.2d 1256, 1258 (1977) (notary public found to be liable), *with Walter E. Haller & Co. v. Fouse,* 62 Ohio App. 147, 23 N.E.2d 453, 456 (1939) (notary public held not liable). But the blank acknowledgment at issue here was made not by Pillar itself (who as a company would not be eligible to serve as a notary public), but rather by an individual whose services Pillar allegedly employed. Seye has not pointed to any Ohio cases addressing whether Pillar could possibly have any liability to Seye under such circumstances, and the Court's research has uncovered no authority for this proposition. *Cf. Davis v. Lawyers Title Ins. Corp.,* No. 1:06 CV 357, 2007 WL 782158, at *3 (N.D.Ohio Mar.13, 2007) (stating, in the context of a class-action lawsuit brought against a title company alleging overcharging for title insurance that "Ohio has not recognized a general fiduciary duty between a title insurance company and a borrower, and other jurisdictions have specifically held that no fiduciary relationship exists in that context"). Given the context in which Seye brings the Third–Party Complaint, it appears that it raises a novel issue of Ohio law. Other courts have declined to exercise supplemental jurisdiction under similar circumstances. *See Donnell v. Kohler Co.,* No. 1:05–1 139–T–AN, 2005 WL 3071784, at *6 (W.D.Tenn. Nov.10, 2005) ("In this case, the court finds that Tennessee law is undefined on the issue of whether an employee may bring a common law negligence action against his employer [in this situation].... Under these circumstances, the court concludes that its discretion would be more appropriately exercised by declining jurisdiction over Mrs. Donnell's common law negligence claims."); *Alvarez v. Hi–Temp Inc.,* No. 03 C 2610, 2004 WL 603489, at *6 (N.D.Ill. Mar.24, 2004) ("The court's jurisdiction

over Alvarez's negligent supervision claim is supplemental under 28 U.S.C. § 1367(a). Where a state law claim raises a novel issue of state law, the court has discretion to decline to exercise supplemental jurisdiction over the claim. Courts generally decline to exercise supplemental jurisdiction if the issue of state law is one of first impression. Here, Alvarez's claim presents a question of first impression for Illinois courts, and thus presents a novel issue of state law. The court therefore opts not to exercise supplemental jurisdiction over the claim." (citations omitted)); *Smolek v. Palos Park Police Dep't*, No. 99 C 8001, 2001 WL 699946, at *4 (N.D.Ill. June 21, 2001) ("Defendants argue . . . that we should not exercise supplemental jurisdiction over Count IV because it raises a novel issue of Illinois law. In support thereof, defendants assert that Smolek has not pointed to, nor have defendants revealed, one . . . case that addresses the specific issue [presented here]. Our own search of Illinois case law has been just as fruitless. . . . Therefore, because [the] claim raises a novel issue of Illinois law, we decline to exercise supplemental jurisdiction." (citations omitted)). *Cf. William A. Randolph, Inc. v. Gator Const, Inc.*, No. 2:06–cv–950, 2007 WL 2301096, at *3 (S.D.Ohio Aug.7, 2007) ("Even assuming arguendo that the state law issues this case presents are somewhat complex—an arguable proposition—they are not so novel or complex that concern for federalism outweighs concerns for judicial economy, convenience, and fairness. Ohio courts have addressed the broad issues involved here, and it appears at this time that this Court will be simply following as opposed to suggesting the applicable state law. The Court therefore elects to exercise its supplemental jurisdiction here.").

Finally, the Court concludes that its declining to exercise supplemental jurisdiction is warranted here based on a consideration of the factors set forth in *Gomel*. As an initial matter, the Court finds that exercising supplemental jurisdiction would not necessarily adequately serve the interests of judicial economy or the convenience of the parties. There are at least two reasons that the Court's exercising supplemental jurisdiction would not serve those interests. First, an exercise of supplemental jurisdictional—if it is permissible at all—would, as the court in *Hospitality Ventures* explained, be appropriate only because the Third–Party Complaint is " 'related to' the bankruptcy case by its nexus with the Debtor's primary claim arising under the Bankruptcy Code that triggers the supplemental jurisdiction principles of § 1367 and brings it within the district court's bankruptcy jurisdiction under § 1334(b)." *Hospitality Ventures*, 358 B.R. at 475. Thus, if it decided the Third–Party Complaint, the Court, as with matters that are within the Court's related-to jurisdiction in the *Pacor* sense, would be required to "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c). This would add a layer of review that would not exist if the Third–Party Complaint were brought as a separate claim in a state court. Second, there is no reason to believe that Pillar would not have a right to a jury trial on the claims asserted in the Third–Party Complaint, and the Court may conduct a jury trial only "if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." 28 U.S.C. 157(e). Given the current posture of this matter—Pillar is seeking to dismiss the

Third–Party Complaint—it would seem inevitable that Pillar will not consent to a jury trial being conducted before this Court. A state court, by contrast, would be able to conduct a jury trial.

Furthermore, the Court finds that any interests that would be served by the Court's exercising supplemental jurisdiction over the Third–Party Complaint are outweighed by the concern that the Court would needlessly be deciding an apparently novel issue of state law. *See Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir.1993) ("In the case at bar, the district court judge felt there were novel state law questions concerning plaintiff's pendent state law claims. Moreover, he found no overwhelming issues of judicial economy, which would weigh towards exercising jurisdiction. It cannot be said that the court's conclusions amounted to an abuse of discretion." (citation omitted)). For all of these reasons, the Court will decline to exercise supplemental jurisdiction over the Third–Party Complaint.

## VI. Conclusion

For the foregoing reasons, the Court finds that the Third–Party Complaint is a non-core proceeding that is not related to the bankruptcy case. Because the Court does not have jurisdiction over the Third–Party Complaint, the Motion is **GRANTED** and the Third–Party Complaint is **DISMISSED.**

**IT IS SO ORDERED.**